UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY D. REAVES,

     Plaintiff,

v.                                             Case No. 05-73820
                                             Honorable Patrick J. Duggan

PATRICIA CARUSO, MR. MACEACHERN,
MR. ZAMIARA, DAN ABRAMS, MR. RILEY,
MR. MEYERS, RICHARD STAPLETON,
JOHN AND/OR JANE DOE, MICHIGAN
DEPARTMENT OF CORRECTIONS,

     Defendants.
_____/

**OPINION AND ORDER**

               At a session of said Court, held in the U.S.
                 District Courthouse, Eastern District
                   of Michigan, on July 24, 2006.

         PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                             U.S. DISTRICT COURT JUDGE

     Plaintiff, a prison inmate in the custody of the Michigan Department of Corrections, filed this *pro se* lawsuit on October 5, 2005, pursuant to 42 U.S.C. § 1983. Specifically, Plaintiff alleges racial discrimination and violation of his First Amendment rights with respect to his transfer to a Level V facility, contending that a Caucasian inmate, guilty of the same misconduct that led to Plaintiff's transfer, was transferred to a Level II facility. Plaintiff does not specify which of the nine defendants are liable for this claim, although he mentions Defendants Meyers, MacEachern, and Zamiara in the

1

allegations supporting the claim.  Plaintiff also asserts a First Amendment violation arising from Defendant Abrams placing him on "Grievance Modified Access."  Finally, Plaintiff's complaint contains a section entitled "Allegation" in which he states that Defendants, individually and/or collectively, violated his Eighth Amendment right against cruel and unusual punishment, his Fourteenth Amendment right against racial discrimination, and his First Amendment right to access the courts.  Plaintiff then lists the following eight acts:

> (a) . . . placing [the Caucasian inmate] in a lower custody . . . and Plaintiff in higher custody;
> (b) Destroying plaintiff's typewriter, to prevent plaintiff from exercising his 1st Amendment rights;
> (c) By restricting plaintiff's legal assistance rights to and file grievance to exhaust administrative procedures;
> (d) By intentionally placing plaintiff in a Correctional Facility that did not have proper legal material, such as typewriters;
> (e) By withholding plaintiff['s] personal legal property;
> (f) By basing decisions concerning plaintiff[] on false documentation contained in department files;
> (g) By manipulating false witnesses against [plaintiff] . . .
> (h) By manipulating MDOC [p]olicy & produces to a desired outcome.

*See* Compl. ¶ 54.

On November 23, 2005, Defendants filed a motion to dismiss, contending that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit, contrary to the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a).  Notably, in response to Defendants' motion to dismiss, Plaintiff asserts "that there is one single issue in this complaint, and that is the subject of grievance SLF-05-02-0360-24c."  That grievance

concerns Plaintiff's claim that his transfer was discriminatory and retaliatory. *See* Resp. ¶ 3. This Court referred Defendants' motion to dismiss to Magistrate Judge R. Steven Whalen.

On June 5, 2006, Magistrate Judge Whalen issued a Report and Recommendation (R&R) concluding that Defendants' motion should be granted and that Plaintiff's complaint should be dismissed without prejudice due to his failure to exhaust his administrative remedies. Specifically, the magistrate judge concluded that Plaintiff failed to name a particular individual in any of the grievances attached to his complaint, as well as in the additional grievances he submitted in response to the motion to dismiss, despite the fact that he knew at least some of the defendants' names when he filed those grievances. In the R&R, Magistrate Judge Whalen refers to the total exhaustion rule adopted by the Sixth Circuit in *Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2003), indicating that Plaintiff's complaint must be dismissed in its entirety if he fails to demonstrate exhaustion with respect to any of his claims. At the conclusion of the R&R, Magistrate Judge Whalen informs the parties that they must file any objections to the R&R within ten days. Plaintiff filed objections on January 15, 2006.

In his objections, Plaintiff contends that Magistrate Judge Whalen erred in concluding that he failed to exhaust his administrative remedies because he failed to name a particular defendant at the Step I grievance level. Focusing on his grievance regarding his transfer, Plaintiff argues that his failure to identify a particular individual at Step I of the grievance process should be excused because he had no way of identifying the

3

wrongdoers.  Although not addressing this claim specifically, Magistrate Judge Whalen had rejected this argument with respect to Plaintiff's complaint, finding that exhibits attached to Plaintiff's response indicate that "he had long-term access to the names of at least some of the Defendants."  (R&R at 5-6).  Plaintiff contends that when he filed his grievance to complain about his transfer, he had no access to documentation or other information which would have provided him with the names of the responsible individuals.

## Standard of Review

The parts of the R&R to which objections are made will be reviewed by the Court *de novo*.  *See* FED. R. CIV. P.  72(b); *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001).

## Discussion

As an initial matter, relying on *Bey v. Johnson*, Magistrate Judge Whalen concluded that Plaintiff's complaint should be dismissed in its entirety because he failed to exhaust his administrative remedies with respect to at least one of the claims in his complaint.  Magistrate Judge Whalen did not decide whether any of Plaintiff's claims were exhausted.  The Sixth Circuit recently indicated, however, that *Bey* was wrongly decided based on the fact that the Sixth Circuit already had adopted the partial exhaustion rule in two prior published opinions.  *Spencer v. Bouchard*, 449 F.3d 721, 726 (6th Cir. 2006)(citing *Hartsfield v. Vidor*, 199 F.3d 305 (6th Cir. 1999) and *Burton v. Jones*, 321

F.3d 569, 574 n.2 (6th Cir. 2003)).[1]  Because *Spencer* instructs that Plaintiff may pursue any claims in his complaint for which he exhausted his administrative remedies, despite his failure to exhaust all of his claims, and because the Court must conduct a *de novo* review with respect to Plaintiff's objections, the Court will review each of the claims in his complaint and decide whether any claim has been exhausted.

As indicated previously, Plaintiff first claims that his rights were violated as a result of his transfer to a Level V facility, based on the fact that a Caucasian inmate allegedly guilty of the same offense was transferred to a Level II facility.  In Grievance #SLF-05-02-0360-24C, Plaintiff challenged his transfer to a Level V facility, claiming the transfer was in retaliation for exercising his First Amendment rights and was racially motivated.  When he filed his complaint, Plaintiff submitted the response to his Step I Grievance, as well as his Step II and Step III appeals.  Plaintiff, however, has not provided the Court with his Step I grievance form.

The Step I response prepared by Assistant Deputy Warden McCabe, however, demonstrates that prison officials understood Plaintiff's Step I Grievance to raise the specific allegations now raised in his complaint.  While Plaintiff admits that he initially did not identify a particular wrongdoer with respect to this grievance– contending that he

---

[1] The Court notes that the Supreme Court has granted writs of certiorari in two Sixth Circuit cases addressing the issues relevant here: (1) whether a prisoner must specifically name the defendant in his grievance in order to exhaust his administrative remedies; and (2) whether a prisoner's complaint must be dismissed in its entirety when it contains exhausted and unexhausted claims.  *William v. Overton*, – U.S. –, 126 S. Ct. 1462 (2006); *Jones v. Bock*, – U.S. –, 126 S. Ct. 1462 (2006).

did not know who was responsible for his transfer at the time– the Court does not believe that this renders his claim unexhausted. *See, e.g.*, Pl.'s Obj. at 3 (stating that "[u]ntil the grievance SLF-05-02-360-24c step-I response, plaintiff had no idea[] that defendant's [sic] Zamiara or MacEachern even existed, much less contributed to the transfer order.") McCabe's response discusses Defendants MacEachern and Zamiara– identifying the former as the individual who requested Plaintiff's transfer and the latter as the individual who approved the transfer. In this Court's view, none of the documents submitted contradict Plaintiff's claim that he did not know about MacEachern's and Zamiara's roles in his transfer before receiving the Step I Response. As the Sixth Circuit indicated in *Thomas v. Woolum*, 337 F.3d 720, 734 (2003), "an inmate need not identify each officer by name when the identities of the particular officers are unknown."

     Thus, in this Court's view, the Step I Response demonstrates that Plaintiff's Grievance #SLF-05-02-0360-24C "alerted prison officials" to Plaintiff's claim. *See Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999); *see also Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001)(explaining that exhaustion requirement "assures, as envisioned under the PLRA, that the prison administrative system has a chance to deal with claims against prison personnel before those claims reach federal court."). The Court therefore concludes that Plaintiff exhausted his administrative remedies with respect to this claim, but as to MacEachern and Zamiara only.[2]

---

[2] In his objections to the R&R, Plaintiff states that he believes Defendants Meyers and/or Riley contributed to his transfer. Because Plaintiff knew the identities of these

6

Plaintiff next claims that his First Amendment rights were violated when Defendant Abrams placed him on Grievance Modified Access.  None of the grievances submitted by Plaintiff address this claim.  Thus the Court concludes that Plaintiff failed to exhaust his administrative remedies with respect to this claim.

Finally, Plaintiff's complaint suggests that he is alleging violations of his rights under the First, Eighth, and Fourteenth Amendments based on eight discrete acts.  Plaintiff has indicated, however, that this lawsuit is not about those acts, but rather his allegedly discriminatory and retaliatory transfer.  The Court therefore finds it unnecessary to address whether Plaintiff has exhausted his administrative remedies with regards to those eight acts.

Accordingly,

**IT IS ORDERED**, that Defendants' motion to dismiss is **DENIED** with respect to Plaintiff's claim alleging discrimination and retaliation against Defendants MacEachern and Zamiara;

**IT IS FURTHER ORDERED**, that Defendants' motion to dismiss is **GRANTED** with respect to Plaintiff's claims against the remaining Defendants.  Except as to the Michigan Department of Corrections, those claims are **DISMISSED WITHOUT PREJUDICE**; Plaintiff's claims against the Michigan Department of Corrections are

---

individuals and believed they were involved in his transfer, yet failed to name them in his grievance, the Court finds his claim as to these individuals unexhausted.

**DISMISSED WITH PREJUDICE** based on Eleventh Amendment Immunity.[3]

                                                  s/PATRICK J. DUGGAN
                                                  UNITED STATES DISTRICT JUDGE

Copies to:

Anthony Reaves, #170656
Marquette Branch Prison
1960 U.S. Highway 41, South
Marquette, MI 49855

Cori E. Reyes, Esq.

Magistrate Judge R. Steven Whalen

---

[3]The Eleventh Amendment bars civil rights actions against a state and its departments and agencies, such as the Department of Corrections, unless the state has waived its immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309 (1989). "The state of Michigan . . . has not consented to being sued in civil rights actions in federal courts," *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), and Congress did not abrogate the states' sovereign immunity under the Eleventh Amendment when it enacted Section 1983. *Hutzell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993).